IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IOAN LELA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18 C 4058 |
| ) | |
| THOMAS J. DART, MICHAEL ) | |
| MILLER, MICHAEL CARBERRY, ) | |
| MARTHA YOKSOULLIAN, and ) | |
| KAREN JAMES HAYES, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Ioan Lela has filed suit under 42 U.S.C. § 1983, seeking damages for alleged violations of the United States Constitution and Illinois law. Lela claims he suffered injuries while housed as a pretrial detainee in the Cook County Department of Corrections (CCDOC) due to the defendants' failure to provide and maintain an adequate air-ventilation system. The defendants have moved for summary judgment on Lela's federal claims.[1] The Court grants the motion for the reasons discussed below.

## Background

Lela filed this suit *pro se*. The Court appointed counsel to represent him. With

---

[1] Lela's second amended complaint also references state law, but it does not include any state law claims in separate counts. The defendants' summary judgment motion addresses only Lela's federal claims; it makes no mention of state law. The Court has no idea whether there are any viable state law claims, but it cannot rule on them based on the defendants' motion because the motion does not address them. The Court therefore dismisses any remaining state law claims for lack of supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).

the assistance of counsel, Lela filed his second amended complaint, which is the operative complaint at this point, and proceeded through discovery. At Lela's request, however, appointed counsel was terminated after a telephonic hearing held on September 22, 2023. Lela, at his own insistence, has proceeded *pro se* since that time; he did not seek appointment of a replacement attorney.

### A. Compliance with Local Rule 56.1

The defendants complied with Local Rule 56.1 in connection with their motion for summary judgment, but Lela did not. Specifically, defendants filed a statement of undisputed facts along with their motion for summary judgment. *See* N.D. Ill. L.R. 56.1(a)(2) & (d). Defendants also served on Lela a notice under Local Rule 56.2, which explains what Federal Rule of Civil Procedure 56 and Local Rule 56.1 require of a *pro se* litigant opposing summary judgment. *See* N.D. Ill. L.R. 56.2.

Despite this, Lela did not comply with Local Rule 56.1, which requires a party opposing a motion for summary judgment to file a response to the movant's statement of facts, "consist[ing] of numbered paragraphs corresponding to the numbered paragraphs" in the movant's statement and either admitting, disputing, or admitting in part and disputing in part the facts asserted by the movant. N.D. Ill. L.R. 56.1(b)(2), (e)(1)–(2). To place an asserted fact in dispute, the responsive statement "must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. L.R. 56.1(e)(3). The Rule also requires the nonmovant separately to file "a supporting memorandum of law" citing "directly to specific paragraphs in" either the movant's statement of facts or the nonmovant's response to that statement. N.D. Ill. L.R. 56.1(b)(1), (g).

Lela did none of this. Based on his noncompliance, the Court could deem all the defendants' properly supported facts to be admitted and proceed directly to determining whether those facts entitle the defendants to summary judgment. Instead, however, the Court has determined to overlook Lela's noncompliance with Local Rule 56.1 and has considered all the materials he has referenced in opposing the defendants' motion: his "pretrial memorandum," dkt. no. 134; his "partial response to defendants' summary judgment motion," dkt. no. 171; his very-recently-filed "surreply," dkt. no. 182; and the materials attached to these filings. *See Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("[W]hether to apply the [local] rule strictly or to overlook any transgression is one left to the district court's discretion.") (quoting *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)).

**B.    Facts**

The facts set out below either are not genuinely disputed by way of any of the evidentiary materials submitted to the Court by Lela or are taken in the light most favorable to Lela, at least where his assertions are supported by admissible evidence. The Court has not, however, considered—and it cannot appropriately consider— evidence offered by either side that would not be admissible at trial. *See, e.g., Aguilar v. Gaston-Camara*, 861 F.3d 626, 631 (7th Cir. 2017).

Lela entered the CCDOC as a pretrial detainee in March 2016. Defs.' L.R. 56.1 Stmt. ¶ 33. From June 2016 to October 2021—the time frame relevant to this case— Lela was housed in Division 11. *Id.* ¶ 34; Pl.'s Pretrial Mem. at 2.

During those five-plus years, Lela was diagnosed with and treated for multiple ailments that he believes were caused by inadequate air ventilation. Defs.' L.R. 56.1

3

Stmt. ¶¶ 38–42; Pl.'s Pretrial Mem. at 2–3 & Pl.'s Resp. at 8. These ailments include "mild sporadic allergic rhinitis," upper respiratory infections, headaches, swollen and watery eyes, bilateral earaches, and scalp dermatitis. Defs.' L.R. 56.1 Stmt. ¶ 38; Pl.'s Pretrial Mem. at 2–3, 6 & Pl.'s Resp. at 8; Lela Dep. at 34:6-24, 35:6–36:8, 39:10-14; Altez Dep. at 28:4-5, 37:7-12, 37:24, 38:9-11, 41:8-11, 48:10-14. The defendants focus on the absence of corroborating medical records in the evidentiary record and challenge Lela's evidentiary support for his contention that he experienced any ailments other than allergic rhinitis and upper respiratory infections. Defs.' Surreply at 13–14. But whether Lela experienced headaches, swollen and watery eyes, earaches, or scalp dermatitis falls within his personal knowledge and is therefore properly supported by his own deposition testimony. *See REXA, Inc. v. Chester*, 42 F.4th 652, 665 (7th Cir. 2022) (genuine factual dispute may exist where nonmovant's testimony is "based on his personal knowledge").

It is at least possible that Lela's ailments may have been caused or contributed to by poor air ventilation. Pl.'s Pretrial Mem. at 5–7 & Pl.'s Resp. at 9; Lela Dep. at 41:2-6, 57:18-23; Altez Dep. at 44:8-15. On this point, Lela says that CCDOC medical personnel told him that poor air ventilation may have caused his ailments. Pl.'s Resp. at 9; Lela Dep. at 41:2-6, 57:18-23. The defendants contend that Lela has cited no admissible evidence to support this assertion. What the medical personnel said to Lela is inadmissible hearsay, but that is not fatal to Lela's assertion, for the defendants themselves cite deposition testimony acknowledging that "exposure to dust, molds, mites, dust mites, pollen, grass, outdoor molds," and humidity, among other factors, can cause allergic rhinitis. Defs.' L.R. 56.1 Stmt. ¶ 39; Altez Dep. at 44:8-15.

4

With respect to Lela's allergic rhinitis, undisputed testimony in the record reflects that medication was effective in preventing acute symptoms and managing Lela's symptoms overall. Defs.' L.R. 56.1 Stmt. ¶¶ 39–40; Altez Dep. at 48:19-23, 78:10-13. But although Lela was eventually transferred out of CCDOC, he continues to experience symptoms of allergic rhinitis and "breathing problems."[2] Lela Dep. at 74:22-24, 75:7-15.

Division 11 uses an air ventilation and filtration system (HVAC system) that was installed in 1995 when Division 11 was built. Defs.' L.R. 56.1 Stmt. ¶ 11. The system circulates air through "two sets of air ducts that come into the main air handler." Id. ¶¶ 12–13. One duct pulls fresh air in from the outside, and the other "pulls the air out [of] cells and recirculates it." Id. ¶ 13. Typically, the system completely cycles the air "through Division 11 with fresh air from outside" at least four times per hour. Id. ¶ 15. The Minimum Efficiency Rating Value (MERV) of the system is 5, but the system actually operates at a MERV of between 8 and 12. Id. ¶ 16. By comparison, the typical HVAC system in a residence has a MERV of between 1 and 4, so the air in Division 11 is "fresher than the air in a [typical] house." Id. ¶ 17. Division 11's HVAC system reaches this relatively higher MERV by using two filters: a "pre-filter" and a "secondary

---

[2] Lela says that doctors have told him that his allergic rhinitis is "permanent." Pl.'s Resp. at 8 & Pl.'s Pretrial Mem. at 6; Lela Dep. at 76:22-24. He has not cited any properly admissible evidence to support this assertion; the doctors' statements are inadmissible hearsay. On the other hand, the question of whether Lela's condition is permanent largely concerns the amount of damages to award him if he prevails, as opposed to whether the defendants are liable in the first place. And in any event, when Lela testified at deposition that his allergic rhinitis is "permanent," the context suggests that he used the word not to mean "perennial" but to mean that he continues to experience symptoms in an "ongoing" fashion even though symptoms may manifest at "different levels" at different times. Lela Dep. at 74:22-24, 75:7-15, 76:22–77:2. There is enough evidence in the record to permit a finding that Lela's rhinitis has persisted since his departure from CCDOC, whether or not it is "permanent."

filter." *Id.* ¶¶ 16, 18. The pre-filter is placed in front of the secondary filter. *Id.* ¶ 18. Lela has offered no evidence that contradicts any of these statements of fact by the defendants.

From 2016 through 2021—the relevant time period here—multiple "safeguards" were in place to ensure that problems with Division 11's HVAC system would be identified. Defs.' L.R. 56.1 Stmt. ¶ 22. The pre-filter "is typically changed every two months," and the secondary filter "is changed . . . every six months." *Id.* ¶ 18. If the filters are dirty and need to be changed, "a building automation system" controlled by the Department of Facilities Management (Facilities) sounds an alarm. *Id.* ¶ 19. Facilities also performs monthly visual inspections "to check the static pressure across the filter[s] with a Magnehelic pressure gauge,"[3] and CCDOC "uses a computer system that monitors the air handlers" to sound an alarm if the static pressure reaches an unacceptable differential. *Id.* ¶¶ 19, 21. In addition, Facilities engineers "inspect the air flow in Division 11" at eight-hour intervals. *Id.* ¶ 20. Again, Lela has not offered any evidence that contradicts any of these statements of fact by the defendants.

Defendants have offered evidence that in addition to the safeguards just discussed, Facilities "tr[ies]" to clean the vent covers in cells twice a year. It also frequently cleans the vents in Division 11, as well as the ductwork leading to the detainees' cells, when it becomes "necessary"—that is, when the Department of Building Management and Construction (Building Management) receives a work order from the Sheriff's Work Order Department. Defs.' L.R. 56.1 Stmt. ¶¶ 24–25; Nolan Dep.

---

[3] A Magnehelic pressure gauge measures the difference between the pressures at the front and back of a filter. Nolan Dep. at 110:22–111:2.

6

at 115:17-19, 116:1-6.  Between 2016 and 2021, Facilities cleaned or otherwise addressed problems with vents in Division 11 more than 100 times.  Defs.' L.R. 56.1 Stmt. ¶ 26.  On some of these occasions, Facilities did so in response to an inmate grievance; on other occasions, Facilities took action at the request of CCDOC staff.  Defs.' L.R. 56.1 Stmt., Ex. I.  Lela has offered no evidence that contradicts any of this.

Lela contends that there has never been any "regularly scheduled maintenance cleaning of the HVAC vents" in Division 11.  Pl.'s Resp. at 7.  This contention, however, is not supported by any evidence other than Lela's own deposition testimony.  *See id.* (citing Lela Dep. at 63:13-22).  And his testimony is not sufficient to create a genuine factual dispute on this point, because Lela lacks personal knowledge (i.e., personal observations) regarding whether such regular maintenance occurred *throughout* Division 11.  *See REXA, Inc.*, 42 F.4th at 665 (no genuine factual dispute where nonmovant's testimony not "based on his personal knowledge").

On the other hand, neither Building Management, which does not perform "any tests for sanitation or health," nor Facilities, which contracts for annual air-quality testing at the CCDOC hospital, has ever done any air-quality testing at Division 11.  Pl.'s Resp. at 6–7 & Pl.'s Pretrial Mem. at 9; Nolan Dep. at 88:2–89:11; Morrison Dep. at 13:12-20, 54:10-15.  Defendants concede that Facilities has never done such testing.  Defs.' Surreply at 9-10.

On February 15, 2018, Lela filed a grievance about the HVAC system in Division 11.  Defs.' L.R. 56.1 Stmt. ¶ 35.  He complained that the HVAC system had not been adequately cleaned, allowing between one and two inches of "elements of human dead skin" and "dust mite particles" to accumulate on the system's vents and cover the intake

7

and outtake air-conditioning covers.  Defs.' L.R. 56.1 Stmt., Ex. D at 2.  A work order was created on February 22, and the vents were cleaned on February 27.  Defs.' L.R. 56.1 Stmt. ¶¶ 36–37 & Ex. E.

## Discussion

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lord v. Beahm*, 952 F.3d 902, 903 (7th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmovant. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017).

Though a convicted prisoner's constitutional rights regarding the conditions of confinement are established by the Eighth Amendment, a pretrial detainee's "rights are derived from the Due Process Clause of the Fourteenth Amendment."  *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).  Thus, whereas a convicted prisoner has the right to be free only "from conditions that constitute *cruel and unusual* punishment," a pretrial detainee is "entitled to be free from conditions that amount to punishment" of any kind. *Id.* (cleaned up) (emphasis added).  To show that the challenged conditions amount to punishment, a pretrial detainee must establish that (1) the conditions are "objectively serious enough to amount to … the denial of a basic human need," *id.*, (2) defendants "possess a purposeful, a knowing, or possibly a reckless state of mind[,]" and (3) defendants' actions are "objectively unreasonable," *Kingsley v. Hendrickson*, 576 U.S.

8

389, 396–97 (2015). Basic human needs include "reasonably adequate ventilation[.]" *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). To avoid summary judgment, Lela must show that there are genuine disputes of material fact with respect to all three elements.

The defendants offer several bases for summary judgment. First, they argue that Lela has failed to show that they "were personally involved in the events giving rise to his claim." Defs.' Mem. in Supp. of Mot. for Summ. J. at 7–9. Second, they contend that Lela cannot sustain a conditions-of-confinement claim because he has failed to show that (1) the challenged conditions were "objectively serious," (2) the defendants acted purposefully, knowingly, or recklessly, or (3) their conduct was objectively unreasonable. *Id.* at 9–13. Third, the defendants argue that qualified immunity shields them from liability. *Id.* at 13–14. Fourth, they contend that Lela's alleged injuries are *de minimis* and therefore insufficient to entitle him to compensatory damages. *Id.* at 14–15. Finally, they argue that Lela has failed to proffer evidence that would sustain his "official capacity" claims. *Id.* at 15–20.

Lela responds to only two of these arguments. First, he argues that the defendants acted knowingly in "fail[ing] to provide adequate ventilation to pretrial detainees" because they are subject to "controlling court orders and statutory code mandates," as well as "controlling correctional safety and health regulation codes," and "blatant[ly] disregard[ed]" their responsibilities to ensure compliance. Pl.'s Resp. at 5–7. Second, Lela disputes defendants' "*de minimis* injuries" argument, contending that he has suffered "permanent injuries" and "medical problems proximately caused by" the

9

defendants' conduct.[4]  *Id.* at 8.

1. **The defendants' state of mind**

The Court begins with the state of mind requirement.  To succeed on his claim, Lela must establish that the defendants engaged in the challenged conduct with "a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley*, 576 U.S. at 396.  Thus, even if Lela could show that the CCDOC's HVAC system exposed him to conditions that were objectively serious and that the defendants' efforts to maintain the system were objectively unreasonable, he would still have to show the defendants were more than negligent in failing to provide adequate ventilation.  *See id.* ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.") (emphasis omitted) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

Lela does not offer any facts supported by evidence that would permit a reasonable jury to find that defendants possessed the requisite intent.  Rather, he asks the Court to infer that defendants were more than negligent because they were "legally responsible" for providing adequate ventilation and failed to do so.  Pl.'s Resp. at 5–8.  Defendant Carberry, Lela argues, is "legally responsible for full compliance with" a 2010 Department of Justice consent decree that mandates "adequate ventilation throughout [CCDOC] to ensure that inmates receive an adequate supply of air flow[.]"  *Id.* at 5; Pl.'s Pretrial Mem., Ex. A at 16.  The decree was renewed in 2015 and requires Facilities to "assess compliance with this requirement on a daily basis for automated systems and

---

[4] As the defendants point out, Lela's failure to respond to their other arguments results in waiver.  *See Bradley v. Village of University Park*, 59 F.4th 887, 897–98 (7th Cir. 2023) (party waives counterarguments by failing to respond).

on an annual basis for non-automated systems." *Id.* To show that Defendant Carberry is "legally responsible," Lela also points to Facilities' official website, which states that Facilities "[e]nsure[s] life safety code compliance in all [CCDOC] facilities."[5] Pl.'s Resp. at 6; Pl.'s Pretrial Mem., Ex. D at 33. Lela then argues that because there has never been any air-quality testing in Division 11,[6] defendants had to have acted knowingly in failing to comply with "controlling court orders and statutory code mandates." Pl.'s Resp. at 6–8.

Even if the Court were to assume that defendants failed to substantially comply with either the consent decree or any "statutory code mandates," that would not be enough to permit a reasonable inference that they were anything more than negligent in doing so. On this point, Lela offers nothing more than speculative and conclusory contentions. He asserts that the defendants acted "willfully," "outrageous[ly]," "horrific[ly]," and with "blatant disregard" for their responsibilities, Pl.'s Resp. at 5–8, but a *reasonable* inference that defendants acted with the requisite culpability requires more than Lela's own speculation or conclusions. *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021) ("Summary judgment requires only that all *reasonable* inferences be drawn in favor of the non-moving party.")

---

[5] Lela also contends that another judge in this district "issued a memorandum opinion and order against" Facilities and defendant Dart "for willful failure to provide adequate ventilation to pretrial detainees." Pl.'s Resp. at 6. The cited decision, however, made no such determination. *See Morton v. Dart*, No. 16 C 5057, 2017 WL 4785925 (N.D. Ill. Oct. 23, 2017).

[6] Lela also cites defendants' alleged failure to perform regularly scheduled maintenance of the HVAC system as reason to infer culpability, Pl.'s Resp. at 7, but his contention about the failure to perform maintenance is not properly supported by any admissible evidence, and thus it cannot factor into the Court's analysis.

11

(emphasis in original); *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014) ("[A] plaintiff seeking to thwart summary judgment must comply with Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 602, both of which require that testimony be based on personal knowledge[,] [which] . . . can include reasonable inferences, but it does not include speculating as to an [opposing party's] state of mind, or other intuitions, hunches, or rumors.").

Lela also says that the defendants failed to perform regularly scheduled maintenance of the HVAC system. He argues that this is a basis to infer the required culpable state of mind. The problem is that Lela has no *evidence* that the defendants failed to perform regularly scheduled maintenance. All he can offer is what he himself observed, which cannot possibly come close to covering anywhere near the entirety of what took place in Division 11. Thus Lela's contention is not supported by admissible evidence.

Because Lela has failed to show a basis for a reasonable inference that any of the defendants acted with the required level of intent, he cannot prevail on his conditions-of-confinement claim. For this reason alone, the defendants are entitled to summary judgment.

**2.    Objective seriousness of the conditions**

Lela likewise has not offered evidence sufficient to permit a reasonable jury to find that the challenged conditions reached the threshold required to sustain his claim. It was no doubt quite unpleasant that between one and two inches of "elements of human dead skin" and "dust mite particles" accumulated on a vent cover (presumably the one in Lela's cell, though that's not entirely clear). Defs.' L.R. 56.1 Stmt. ¶ 23 & Ex.

D at 3. But that does not by itself indicate that this "pose[d] a significant risk of severe harm" to Lela or other pretrial detainees. *See Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016) ("Prisons are not required to provide a 'maximally safe environment,' but they must address easily preventable, observed hazards that pose a significant risk of severe harm to inmates[.]") (quoting *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001)). Rather, Lela would need some form of evidentiary support—either expert testimony or some other evidence—providing a scientific and/or statistical basis to conclude that the accumulation of dust and debris or the state of the HVAC system as a whole presented a danger of serious harm. *See Henderson v. Sheahan*, 196 F.3d 839, 847 (7th Cir. 1999). Lela has offered no evidence along these lines.

**3.      Objective unreasonableness of the defendants' actions or inaction**

Nor has Lela pointed to evidence that would permit a reasonable jury to find that the defendants' actions or inactions in maintaining Division 11's HVAC system were "objectively unreasonable." *Kingsley*, 576 U.S. at 397. Though it appears to be the case that neither Building Management nor Facilities has ever performed any air-quality testing at Division 11, Pl.'s Resp. at 6–7; Pl.'s Pretrial Mem. at 9; Nolan Dep. at 88:2–89:11; Morrison Dep. at 13:12-20, 54:10-15, the defendants have offered evidence establishing that they have implemented multiple safeguards to ensure identification of problems with HVAC system, including monitoring and regularly changing filters, monitoring and regularly inspecting the system for unacceptable static pressure changes, inspecting the air flow three times daily, and cleaning the vent covers and related ductwork at least a hundred times over the relevant period. Defs.' L.R. 56.1 Stmt. ¶¶ 18–22, 24–26; Nolan Dep. at 115:17-19, 116:1-6. Moreover, the record

reflects when Lela filed a grievance, the defendants promptly responded by cleaning the vents on his tier. Defs.' L.R. 56.1 Stmt. ¶¶ 35–37 & Ex. E. In this context, even if the accumulation that Lela says he observed indicates that the defendants had neglected to take some precautionary or remedial measures, no reasonable jury could find the totality of their conduct to be "objectively unreasonable."

In sum, Lela has not offered evidence that would permit a reasonable jury to find in his favor on any of the essential elements of his conditions-of-confinement claim. This is true even after overlooking his failures to comply with Local Rule 56.1 and accounting for any additional (and supported) facts he asserts in his pretrial memorandum and memorandum of law. Thus, whether on the merits or via qualified immunity, which requires a plaintiff to establish a constitutional violation, *see Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (immunity attaches where there is no constitutional violation even if right was clearly established), the defendants are entitled to summary judgment. The Court therefore need not address the defendants' remaining arguments for summary judgment.

### Conclusion

Plaintiff's motion to file a surreply [181] is granted. For the foregoing reasons, the Court grants the defendants' motion for summary judgment [160] and directs the Clerk to enter judgment stating: Plaintiff Ioan Lela's claims under federal law are dismissed with prejudice; any claims by plaintiff under state law are dismissed under 28 U.S.C. § 1367(a)(3) for lack of supplemental jurisdiction.

Date: July 8, 2024

_____
MATTHEW F. KENNELLY
United States District Judge